IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                   Case No. 4:19-cr-00174 KGB

ANTONIO FOWLER                                                                          DEFENDANT

**ORDER**

This Court accepted guilty pleas from defendants Laron Williams, Terry McClendon, Michael Brewer, Dekimberol Brewer, and Antonio Fowler; each pled guilty to count one of the indictment charging conspiracy to commit an offense against the United States, a violation of 18 U.S.C. § 371, with the underlying offense of knowingly providing and possessing a prohibited object in prison in violation of 18 U.S.C. § 1791 (Dkt. Nos. 67; 72; 83; 78; 95). The United States and defendants Mr. Williams, Mr. McClendon, Mr. Brewer, and Mr. Fowler disagree with respect to the amount and type of contraband involved in this conspiracy attributable to each of them. The Court conducted an initial sentencing hearing on July 21, 2021, at which counsel for the United States, representatives of the United States, counsel for all defendants, and all defendants except Mr. Williams were present. Mr. Williams knowingly and voluntarily waived his right to appear in person at the hearing, video conferencing was not reasonably available, and Mr. Williams knowingly and voluntarily appeared by teleconference at the July 21, 2021, sentencing hearing. Proof was presented to the Court on the specific issue of the amount and type of contraband involved in this conspiracy attributable to each defendant.

    I.    **Elements Of The Offense Of Conviction**

The offense of conviction is conspiracy to commit an offense against the United States, a violation of 18 U.S.C. § 371, with the underlying offense of knowingly providing and possessing

a prohibited object in prison in violation of 18 U.S.C. § 1791. To convict defendants under this count, the United States is required to prove that an agreement to provide a prohibited object in prison was reached, that each defendant voluntarily and intentionally joined in the agreement, that each defendant knew the purpose of the agreement, and that one of the co-conspirators did one or more overt acts in furtherance of the conspiracy. *See United States v. Holloway*, 128 F.3d 1254, 1257 (8th Cir. 1997).

"Intentional participation in a criminal conspiracy. . . need not be proved by direct evidence; a common purpose and plan may be inferred from a development and a collocation of circumstances." *United States v. Prieskorn,* 658 F.2d 631, 634 (8th Cir. 1981) (internal quotation marks omitted); *see also United States v. Huggans*, 650 F.3d 1210, 1222 (8th Cir. 2011). "Moreover, to be guilty of a single conspiracy, the conspirators need not know each other or be privy to the details of each enterprise comprising the conspiracy as long as the evidence is sufficient to show that each defendant possessed full knowledge of the conspiracy's general purpose and scope." *Prieskorn,* 658 F.2d at 634 (internal quotation marks and alteration omitted).

The United States and defendants Mr. Williams, Mr. McClendon, Mr. Brewer, and Mr. Fowler disagree with respect to the amount and type of contraband involved in this conspiracy attributable to each of them. The type of contraband dictates the base offense level and certain specific offense characteristics that may be assessed at sentencing. In each plea agreement entered into by these defendants, the following language appears:

> The parties agree that the sentence will be determined pursuant to U.S.S.G. § 2X1.1 and U.S.S.G. § 2P1.2, and, if determined to apply, U.S.S.G. § 2D1.1. More specifically, the parties agree that the base offense level, and any special offense characteristics, and any cross-references will depend on the type of "prohibited object" the Court finds at sentencing after hearing from the parties.

(Dkt. Nos. 67, at 4; 72, at 4; 83, at 4; 78, at 4; 95, at 4).

## II.     Applicable Standard

At this stage, the Court makes findings of fact by a preponderance of the evidence. *See, e.g., United States v. Bah,* 439 F.3d 423, 426 n. 1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."); *see also United States v. Bastian*, 650 F. Supp. 2d 849, 856–57 (N.D. Iowa 2009), *aff'd*, 603 F.3d 460 (8th Cir. 2010).  The Eighth Circuit Court of Appeals has determined that "[i]ncreasing a defendant's sentence based on facts found by a judge by a preponderance of the evidence 'violate[s a defendant's] rights only if the sentence exceed[s] the statutory maximum.'" *United States v. LeBeau*, 867 F.3d 960, 978 (8th Cir. 2017) (quoting and citing *United States v. Campbell*, 764 F.3d 880, 893 (8th Cir. 2014); *United States v. Villareal-Amarillas*, 562 F.3d 892, 898 (8th Cir. 2009)).  The maximum term of imprisonment under the statute for the offense of conviction is five years.  18 U.S.C. §§ 371, 1791.  The Court does not intend to impose a sentence that exceeds the statutory maximum for the offense of conviction, and the Court does not understand the United States to be seeking such a sentence for any defendant in this case.

"It is well-established that, 'when a defendant disputes material facts in his [Presentence Investigation Report ("PSR")], the sentencing court must either refuse to take those facts into account or hold an evidentiary hearing.'" *United States v. Cochrane*, 608 F.3d 382, 383 (8th Cir. 2010) (quoting *United States v. Morehead*, 375 F.3d 677, 679 (8th Cir. 2004)); *see also United States v. Mitchell*, 825 F.3d 422, 425 (8th Cir. 2016).  Application of sentencing enhancements must be supported by a preponderance of the evidence, and the government has the burden to prove the factual basis for an enhancement.  *Cochrane*, 608 F.3d at 383.  If the defendant objects to the factual basis for a sentencing enhancement, and the government fails to

present evidence to prove that factual basis by a preponderance of the evidence, it is error to apply the enhancement.  *See, e.g., United States v. Poor Bear*, 359 F.3d 1038, 1041–42 (8th Cir. 2004).

The Court considers a wide variety of evidence to arrive at a sentence, including undisputed portions of the PSR and testimony and other evidence the parties introduced and may introduce at the sentencing hearings.  The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed, and even acquitted conduct at sentencing.  *See, e.g., United States v. Whiting,* 522 F.3d 845, 850 (8th Cir. 2008); *see also Bastian*, 650 F. Supp. 2d at 856–57.

During the status hearing, defense counsel for Mr. Brewer lodged a hearsay objection. When relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the Court may credit hearsay at the sentencing phase.  *United States v. Sharpfish,* 408 F.3d 507, 511 (8th Cir. 2005).  "'Hearsay is admissible in a sentencing hearing and can be used to determine facts if the hearsay has sufficient indicia of reliability.'"  *United States v. Schlosser,* 558 F.3d 736, 740 (8th Cir. 2009) (quoting *United States v. Hansel,* 524 F.3d 841, 847 (8th Cir. 2008)).  To the extent the Court intends to rely on hearsay to support a factual finding pertinent to sentencing, the Court will make specific findings about the indicia of reliability to support the conclusion that the hearsay is probably accurate.

"The Eighth Circuit Court of Appeals has repeatedly held—before and after *Crawford* [*v. Washington,* 541 U.S. 36 (2004)]—that the Confrontation Clause does not apply at sentencing." *United States v. Bentley,* 492 F. Supp. 2d 1050, 1055 (N.D. Iowa 2007) (Reade, C. J.), *aff'd,* 561 F.3d 803 (8th Cir. 2009), *cert. denied,* 558 U.S. 865 (2009).

In *United States v. Reyna Rodriguez*, 810 F. App'x 470, 473 (8th Cir. 2020), the defendant argued that the district court clearly erred because its drug quantity finding was based

on hearsay statements of co-conspirators who did not testify at the sentencing hearing and other purportedly unreliable testimony.  The Eighth Circuit concluded that the district court did not clearly err in finding the drug quantity for base offense level purposes based on detailed fact recitals in the PSR, to which there were few specific objections, and the corroborated testimony of two witnesses the district court expressly found credible.  *Id.*  In reaching its conclusion, the Eighth Circuit reaffirmed that a district court "'may rely on hearsay evidence for sentencing purposes, as long as it has sufficient indicia of reliability to support its probable accuracy.'"  *Id.* (quoting *United States v. Moralez*, 808 F.3d 362, 368 (8th Cir. 2015)).  Further, the district court found both the agent and a cooperating co-defendant witness credible, a finding nearly unreviewable on appeal.  Although the agent's testimony included hearsay from co-conspirators and investigating officers, the district court found it was corroborated by the cooperating co-defendant witness and other evidence including recorded calls, phone records, controlled purchases, vehicles registered to Renya, and the seizure of methamphetamine and cash from Renya's residence and vehicle.  *Id.*  The Court finds the Eighth Circuit's determination in *Reyna* instructive here.

### III. Findings Of Fact

In August and September 2017, the United States Marshal Service ("USMS") contracted with the Dallas County, Arkansas, Detention Center ("DCDC") to hold federal inmates.  During that time, defendants Mr. McClendon, Mr. Brewer, and Mr. Fowler were detained in the DCDC in B Pod while awaiting resolution of their federal criminal cases.  Defendant Mr. Williams was a guard working at the DCDC.

#### A.   September 4, 2017, Delivery

In August 2017, Mr. McClendon approached Mr. Williams and offered to pay Mr. Williams money if Mr. Williams would bring tobacco and marijuana into the DCDC.  On

September 4, 2017, Mr. McClendon told Mr. Williams that a woman would meet him with a package containing the contraband in the DCDC parking lot. On September 4, 2017, defendant Ms. Brewer, defendant Mr. Brewer's wife, texted Mr. Williams and informed him that she had arrived at the jail. Ms. Brewer gave to Mr. Williams a package that was wrapped in black tape to deliver to Mr. McClendon. According to witness statements and recorded telephone calls, the package contained tobacco and marijuana, and the United States presented the testimony of experienced Federal Bureau of Investigation Agent Brian Blanton, who learned through witness interviews, that a cell phone also was included in the September 4, 2017, package. A review of the DCDC security video on September 4, 2017, revealed that Mr. Williams gave the package wrapped in a blanket to Mr. McClendon (Gov. Ex. 2). Agent Blanton testified that, based upon witness interviews, he understands that the cell phone might have been given to Mr. Brewer and that the inmates in B Pod, including Mr. McClendon, Mr. Brewer, Mr. Fowler, and Angel Bermudez, shared among themselves the remaining contraband, including tobacco and marijuana. Agent Blanton testified that nothing from September 4, 2017, was recovered during a search.

    **B.**  **September 9, 2017, Delivery**

On September 8, 2017, Mr. McClendon approached Mr. Williams again to ask Mr. Williams to bring in another package. An associate of Mr. Fowler, whom the Court understands is April Ricks who was at the time Mr. Fowler's girlfriend, informed officers that Mr. Fowler asked her to pick up money from another inmate and that Ms. Ricks agreed to pick up the money.

The United States maintains that Mr. Fowler put Ms. Ricks on the telephone with Mr. McClendon and that Mr. McClendon asked Ms. Ricks to receive a money transfer at Walmart. The United States further maintains that Ms. Ricks retrieved the money from Walmart and contacted Mr. Fowler by telephone.

According to the United States, Mr. McClendon also requested that Ms. Ricks pick up a package from an unidentified person and meet Mr. Williams in the parking lot of the DCDC later that evening. Ms. Ricks asked Mr. Williams if he was "Laron" and gave him the black tape-wrapped package to provide to Mr. McClendon. Mr. Williams put the package in his vehicle and left it there until he went back to work the next day.

On September 9, 2017, Mr. Williams went to work at the DCDC and delivered the package which was wrapped in black tape and carried under a blanket to Mr. McClendon. Both the September 4 and September 9 packages were wrapped in black tape and carried under a blanket, according to Agent Blanton. A review of the DCDC security video from September 9, 2017, revealed that Mr. Williams got out of his car with an object wrapped in a blanket and later passed it to Mr. McClendon in B Pod where Mr. McClendon and others were housed (Gov. Ex. 2).

Another DCDC employee noticed the transfer of the blanket wrapped package from Mr. Williams to Mr. McClendon, according to Agent Blanton. Therefore, B Pod where Mr. McClendon, Mr. Brewer, and Mr. Fowler were housed was searched. Agent Blanton testified that officers found a pillowcase which contained two square objects on a bed in the pod and that the square objects were packages of cocaine and heroin.

Security video shows Mr. Williams passing a blanket wrapped package to Mr. McClendon. Mr. McClendon walked off screen with the blanket wrapped package. Then, Mr. McClendon can be seen on the security video walking back on screen carrying what appears to be the same blanket wrapped package toward one of the bunks in B Pod. Mr. McClendon then sits down, and Mr. Brewer approaches the bunk. Another inmate of B Pod, who is believed by Agent Blanton to be inmate Mr. Bermudez, takes something and places it on or under a portion of the top bunk. Agent

Blanton, when asked on cross-examination, was unable to identify what the item taken by Mr. Bermudez was.

Agent Blanton testified that, based upon his interviews, Mr. Williams received this package from Ms. Ricks, Mr. Fowler's girlfriend. Mr. Williams was unable to identify who brought him the package, but Agent Blanton interviewed Ms. Ricks who told him that she received a phone call from Mr. Fowler inquiring about picking up money for another inmate and that she was put on the phone with Mr. McClendon who gave her instructions on picking up money at a Walmart and receiving a package to bring to Mr. Williams for delivery, along with money to be delivered to Mr. Williams.

Agent Blanton acknowledged that there were no recorded jail calls of the purported conversation between Ms. Ricks and Mr. Fowler or Mr. McClendon; Agent Blanton testified that these calls likely were made in B Pod on a contraband cell phone. Agent Blanton also verified that it is not clear whether Mr. McClendon or someone else ordered cocaine and heroin to be delivered, but cocaine and heroin were delivered to the DCDC. Ms. Ricks verified this transaction during her interview.

Further, Agent Blanton testified that the FBI was able to obtain transaction records that showed Ms. Ricks received money from Walmart on September 8 from Ms. Brewer (Gov. Ex. 3). Mr. Brewer arranged for Ms. Brewer to pay Ms. Ricks, based upon jail calls that were listened to by law enforcement (Gov. Ex. 4).

Agent Blanton also testified based upon interviews conducted with Mr. Bermudez, another inmate in B Pod who provided investigators with information. Agent Blanton learned from these interviews that Mr. McClendon and Mr. Brewer opened the blanket wrapped package after it had

8

been delivered to B Pod. According to Agent Blanton, Mr. Bermudez's statements during interviews were consistent with testimony given under oath to the grand jury

Agent Blanton also confirmed that, during interviews with law enforcement, Mr. Williams confirmed that he was paid or to be paid for bringing in and delivering to B Pod packages containing contraband. He was paid first by Ms. Brewer and was to be paid second by Ms. Ricks.

Mr. Williams testified at the status hearing. He acknowledged that, for the September 4, 2017, package, he understood that package would contain tobacco and marijuana. He disclaimed any knowledge that cocaine or heroin would be included in the September 9, 2017, package. Mr. Williams claimed that he understood from a conversation with Mr. McClendon that the September 9, 2017, package also would contain tobacco and marijuana; Mr. Williams knew he was to deliver both packages to Mr. McClendon. Mr. Williams also stated that he did not open the packages before delivering them to Mr. McClendon.

Arkansas State Crime Laboratory results confirmed the package contained 764.4 grams of cocaine and 739.6 grams of heroin (Gov. Ex. 1). The marijuana equivalency for 764.4 grams of cocaine is 152.88 kilograms. The marijuana equivalence for 739.6 grams of heroin is 739.6 kilograms. The total marijuana equivalency involved in this case is 892.48 kilograms.

According to his defense counsel, based on information provided to the United States Probation Office for purposes of addressing the Presentence Report Memorandum prepared for Mr. McClendon, Mr. McClendon maintains that he made his own arrangements with Mr. Williams to receive cigarettes and marijuana only. Mr. McClendon maintains that no one was present when he unwrapped the taped and blanket-covered package, which Mr. McClendon claims contained only cigarettes and marijuana he received from Mr. Williams (Dkt. No. 89, at 2). Mr. McClendon

advised that he was in the restroom of the DCDC at the time he unwrapped the taped and blanket-covered package containing the contraband (Dkt. No. 89, at 2).

Mr. McClendon, in a written filing with the Court, denied having a telephone conversation with anyone, denied knowing Mr. Fowler, and denied knowing Ms. Ricks or Individual A as she was referenced in the Presentence Report Memorandum (Dkt. No. 89, at 1). Mr. McClendon denies asking her to receive a money order transfer at Walmart (*Id.*). Mr. McClendon maintains that he is unaware of any contact Ms. Ricks may have had with Mr. Fowler and that he never spoke with Ms. Ricks on the telephone nor did he ask Ms. Ricks to pick up a package from another person (*Id.*).

Mr. McClendon asserts that any deliveries of other contraband were made by other individuals and Mr. Williams, to include the delivery of contraband on September 9, 2017, received by Mr. McClendon on September 9, 2017, and were delivered negotiated, agreed to, or made by the individuals who received the heroin and the cocaine (Dkt. No. 89, at 1). Through his counsel, Mr. McClendon denies that it was his role to receive the contraband on September 9, 2017, and specifically asserts that Mr. Brewer received his delivery of cocaine and heroin through a scheme in which the drugs were placed in a mop bucket and retrieved by Mr. Brewer from the mop bucket while on his unit (Dkt. No. 89, at 1-2). Mr. McClendon asserts that any cocaine or heroin was not directly delivered to him.

### IV.  Conclusions And Determinations

Based on his experience, background, and training; his demeanor while testifying on direct examination and cross-examination; and his overall presentation of proof, the Court finds the testimony of Agent Blanton credible and persuasive. Agent Blanton's testimony was corroborated by security video from the DCDC; transaction records for the Walmart money transfer; recorded

jail telephone calls; records from the Arkansas State Crime Laboratory; and numerous witness interviews as testified to by Agent Blanton. Mr. Bermudez's statements to law enforcement were consistent with grand jury testimony offered by Mr. Bermudez under oath; security video from the DCDC; recorded jail telephone calls; records from the Arkansas State Crime Laboratory; and other witness interviews as testified to by Agent Blanton. Ms. Ricks provided statements to law enforcement that were consistent with security video from the DCDC; transaction records for the Walmart money transfer; recorded jail telephone calls; and other witness interviews as testified to by Agent Blanton.

Because a DCDC employee noticed the transfer of the blanket wrapped package from Mr. Williams to Mr. McClendon on September 9, 2017, according to Agent Blanton, B Pod where Mr. McClendon, Mr. Brewer, and Mr. Fowler were housed was searched. Agent Blanton testified that officers found a pillowcase which contained two square objects on a bed in the pod and that the square objects were packages of cocaine and heroin. Arkansas State Crime Laboratory results confirmed the package contained 764.4 grams of cocaine and 739.6 grams of heroin.

At this time, the Court concludes that the United States has proved by a preponderance of the evidence that defendants Mr. McClendon, Mr. Brewer, and Mr. Fowler conspired to provide or possess a distributable quantity of a narcotic drug in prison and that the object of the offense was the distribution of a controlled substance pursuant to U.S.S.G. § 2P1.2. The Court reserves ruling with respect to defendant Mr. Williams and has the issues under advisement with respect to Mr. Williams. The Court understands from the parties' arguments at the hearing that a ruling is not necessary on this issue as to defendant Ms. Brewer.

### V. Position Of Each Defendant

#### A. Mr. Williams

At this time, the Court reserves ruling with respect to defendant Mr. Williams and has the issues under advisement with respect to Mr. Williams.

#### B. Mr. McClendon

Currently, given his guilty plea to 18 U.S.C. §§ 371 and 1791, conspiracy to provide and possess a prohibited object in prison, the Court anticipates that Mr. McClendon's PSR will calculate a base offense level of 13 as a result of the prohibited object being a narcotic drug (heroin, cocaine, and marijuana). U.S.S.G. § 2P1.2(c) is cross-referenced as the object of the offense was the distribution of a controlled substance. Therefore, the offense level from U.S.S.G. § 2D1.1 is applied. If Mr. McClendon is held responsible for at least 700 kilograms but less than 1,000 kilograms of marijuana equivalency, the base offense level is 28 pursuant to U.S.S.G. § 2D1.1(c)(6). A two-level enhancement is applied because the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility pursuant to U.S.S.G. § 2D1.1(b)(4). As a result, the adjusted offense level as calculated in Mr. McClendon's PSR is likely to be 30.

#### C. Mr. And Ms. Brewer

Recorded DCDC telephone calls between Mr. Brewer and Ms. Brewer revealed Mr. Brewer set up the delivery of the September 4, 2017, package with Ms. Brewer. During the telephone conversations, they referred to the marijuana and tobacco as "smoke and bac." On September 8, 2017, Mr. Brewer and Ms. Brewer were recorded discussing Ms. Brewer sending $300.00 to Individual A, who the Court understands is Ms. Ricks, via a Walmart money transfer.

Ms. Brewer contacted Mr. Brewer by telephone and provided Mr. Brewer with the Walmart money transfer confirmation number once the transaction was complete.

Currently, given his guilty plea to 18 U.S.C. §§ 371 and 1791, conspiracy to provide and possess a prohibited object in prison, the Court anticipates that Mr. Brewer's PSR will calculate a base offense level of 13 as a result of the prohibited object being a narcotic drug (heroin, cocaine, and marijuana).  U.S.S.G. § 2P1.2(c) is cross-referenced as the object of the offense was the distribution of a controlled substance.  Therefore, the offense level from U.S.S.G. § 2D1.1 is applied.  If Mr. Brewer is held responsible for at least 700 kilograms but less than 1,000 kilograms of marijuana equivalency, the base offense level is 28 pursuant to U.S.S.G. § 2D1.1(c)(6).  A two-level enhancement is applied because the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility pursuant to U.S.S.G. § 2D1.1(b)(4).  As a result, the adjusted offense level as calculated in Mr. Brewer's PSR is likely to be 30.

The United States did not object to the PSR prepared for defendant Ms. Brewer, which has a final date of August 4, 2020.  In Ms. Brewer's PSR, she admits that she participated in the first delivery of tobacco and marijuana.  Further, she admits that she sent $300.00 via Walmart to a person she was told to send it to.  However, Ms. Brewer maintains that she did this because she no longer wanted to participate in these contraband activities.  According to her defense counsel, the phone calls show that Ms. Brewer was upset and not a willing participant in the second delivery.  She maintains that she did not participate nor have knowledge of what was being delivered the second time.  In her PSR, Ms. Brewer's base offense level is 6.  The guideline for a violation of 18 U.S.C. § 371 is U.S.S.G. § 2X1.1.  Pursuant to § 2X1.1(a), U.S.S.G. § 2P1.2 is referenced when determining the offense level.  The offense involved a controlled substance (marijuana) and tobacco.  As a result, the base offense level for Ms. Brewer as calculated in her PSR is six pursuant

13

to U.S.S.G. § 2X1.1(a) and § 2P1.2(a)(3). There are no specific offense characteristics or other adjustments included in Ms. Brewer's PSR.

### D. Mr. Fowler

Currently, given his guilty plea to 18 U.S.C. §§ 371 and 1791, conspiracy to provide and possess a prohibited object in prison, the Court anticipates that Mr. Fowler's PSR will calculate a base offense level of 13 as a result of the prohibited object being a narcotic drug (heroin, cocaine, and marijuana). U.S.S.G. § 2P1.2(c) is cross-referenced as the object of the offense was the distribution of a controlled substance. Therefore, the offense level from U.S.S.G. § 2D1.1 is applied. If Mr. Fowler is held responsible for at least 700 kilograms but less than 1,000 kilograms of marijuana equivalency, the base offense level is 28 pursuant to U.S.S.G. § 2D1.1(c)(6). A two-level enhancement is applied because the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility pursuant to U.S.S.G. § 2D1.1(b)(4). As a result, the adjusted offense level as calculated in Mr. Fowler's PSR is likely to be 30.

## VI.   Conclusion

A second sentencing hearing will be set in this matter as to each defendant who has entered a guilty plea. The Court will hear from counsel at that time and will make a final determination as to sentencing.

Dated this 23rd day of August, 2021.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge